with Broussard v. Jefferson County. Mr. Kennard. Good afternoon. I may please the court. You're really becoming a pain in my ass. Those are important words. Those are words that were spoken by Sheriff Woods to our client, Deputy Broussard, that make it very well known that he is concerned and is aware of statements that are being made by him both internally and externally in the public purview. Now, my name is Alfonso Kennard and I represent Appellant Stephen Broussard and I would like to reserve five minutes for this afternoon. I'd like to focus on why the record in this case simply does not support the trial court's dismissal of Mr. Broussard's claims. First and foremost, this was dismissed at the 12B6 level. That's an extraordinary remedy, a remedy that is not often used, in my experience as a trial practitioner, very rarely used. And in this instance, this should not have been one of those instances in which a dismissal was granted before any discovery, before anything happened. Well, on the question of the pleadings, of course, I'm sure you agree we apply Iqbal. And you didn't plead that Mr. Woods knew of your client's external speech. So under 12B6, don't we consider that that was not properly raised? Well, judges, obviously, this is a First Amendment retaliation case involving speech by Broussard, both inside and outside the scope of his employment. In that vein, the pleadings indicate that the speech was made by Broussard and that Sheriff Woods was actually aware. We didn't state how he was aware, but that's not the pleading. Well, on that point, the argument was it was didn't you? That is correct, Judge. To allege more specific facts, not just the conclusion that the Sheriff knew. Right. And, well, his pleadings were substantial, even after it was we amended the complaint. All inferences of doubt in these instances must be construed in the favor of the plaintiff. Now, this applies both to his 1983 claims and to the preclusion of qualified immunity. These pleadings are not threadbare. That's the standard. Whether or not these pleadings are threadbare. On the causation piece, what facts would allow reasonable juror to infer that the Sheriff knew or that someone knew? Right. So, again, we're at the 12B6 phase. We hadn't even gotten there. And that's really the argument today, is that we should be afforded the opportunity to get there. We still have to prove that he was ultimately aware that this speech happened and that he was ultimately the person that the speech was about. We have to prove that, no doubt. In fact, we still have to survive summary judgment on that issue after a reasonable amount of discovery was happened. But that's not the case here. Now, any juror, to answer your question specifically, would know of external speech in March of 2009, where Broussard spoke out regarding wasteful spending to retired County Commissioner Domingue. Also, in September of 2010, my client had dinner with a number of individuals, including Judge Lane Walker, regarding wasteful spending, abuse of overtime and corruption in upper management, including Sheriff Woods. More external speech. I could give you instances of internal speech, which include the reporting of rampant abuse of overtime to supervisors, including Major James Singletary. Payroll duties were removed from Broussard as a result of this complaint. And, in fact, Broussard was told, again, in no absence, there's nothing in the record that would contradict that this statement was ultimately made by Sheriff Woods. I can continue with more examples if you'd like, Judge. What I'm interested in is, on the external speech, what facts tie knowledge on behalf of the County that the external speech was made? And I think, Judge, you're talking about, again, would a reasonable juror come to that conclusion at some point? It's hard for me to see how they would know about the speech at the dinner. How would they know about the other external speech? Okay. Well, again, we're not there yet, is my point. And there's a litany of other speech, speech where he went to a Texas Tea Party rally to discuss the same wasteful spending, the corruption naming Sheriff Woods, in a large forum. And, again, so just the mere statement, you're really becoming a pain in my ass, goes to knowledge that this individual, Sheriff Woods, is, in fact, aware that statements are being made about him. That's all we need to put in front of the court at this initial phase. So we, again, Judge, we'd have to prove that, at some point, he did have this requisite knowledge because, obviously, that is one of the characteristics and requirement for a claim like this one to proceed successfully. But, again, we aren't there yet. Now, I think another issue here is to make the distinction between internal speech and external speech. In this instance, part of his job was payroll. There's no question about that. Part of his job function, I'm going to call this the job description type of work, was to address discrepancies in the payroll. Now, that means, hey, payroll's wrong. We need to address this. Payroll's not correct. That would be part of his job function. But as a private citizen, he's addressing publicly corruption and malfeasance, both at work, which that itself would be beyond the scope of his job description duties. It's one thing to say the payroll's not correct. It's a wholly distinct thing to say that there is corruption happening. The reason there's a problem with this payroll is because folks are being paid for time they're not working. They're being paid overtime for overtime they're not working. They're being paid for time where they're working other jobs. So they're on the payroll, getting paid. Meanwhile, they're working another job during that same time. These are absolutely matters of public concern. And under Anderson and Garcetti, it's very clear that regardless of where these statements are made, within the workplace, in his chair or wherever he's working that day, or he's outside at a Tea Party rally, or speaking with a group of commissioners and former commissioners, that this speech is protected by virtue of the fact that it goes above and beyond the scope of his normal job function. Now, he's protected by Section 1983. Ultimately he was forced out. He was given essentially an ultimatum. You leave or you're going to be gone, one way or the other. And at that point, if you're in his position, you have the option of saving face, protecting your medical benefits and all the benefits that you've worked so hard to acquire as a dutiful public servant who had the guts to step out and make these claims known or lose all of that. Everything he worked for would be gone if he didn't leave on the terms that were presented to him. He was ultimately forced out, and that's retaliation under 1983. And again, I'm going to have to prove that at some point. But here at the 12B6 phase, we're not even at the more stringent summary judgment phase. We're at the 12B6 phase, where as long as these pleadings are not threadbare, and they claim without getting into the facts, and the trial court, I believe, erred in essentially imputing its sense of the facts as opposed to allowing this to proceed forward as is required because as long as it has been pled, that he knew, not how he knew. And I understand there's a subtle distinction there. Counselor, how do you say that he knew without saying how he knew? Well, that's not the requirement in Anderson, and that's not the requirement in Garcetti to make that what could be a subtle distinction. All that matters is that we pled without delving into whether or not that pleading is actually correct or not at this phase, that he knew. That's all we have to say. He knew. We don't have to delve into the how he knew, how he got there, whether or not he later had dinner with some other commissioner that then raised it to him, or they were playing golf one day and it became known to him in a casual conversation. All that does not matter, and that's where the trial court ultimately erred. His pleadings are substantial. All inferences of doubt must be construed in his favor. Now I know counsel who will be up here shortly is going to rely substantially on Iqbal and Twombly, but those don't apply. This Court has, since then, those are older cases. Since that time, this Court took Anderson and interpreted Garcetti, which is a United States Supreme Court case that is subsequent to both Iqbal and Twombly, for this particular set of facts, a fact pattern just like this one. And in Anderson, said just that. You don't have to say how. You just got to say that. And the same applies to the qualified immunity component. The immunity protects all but the plainly incompetent or those who knowingly violate the law. So when it comes right down to it, when we're looking at qualified immunity, illegal actions aren't protected. Statutory and constitutional rights that are violated by official and that the right we can show is clearly established, that's it. That's all you need. Immunity does not protect those that knowingly violate the law. Now, so that also applies to the qualified immunity component. Now, again, the Court erred in attempting to address the correctness of the plaintiff's version of the facts versus the pleading itself. The pleading does not need to say anything but that the sheriff knew. That's it. We'll get into the rest as we go through the discovery process and we get into the rest when we have to protect this at the summary judgment phase. What was your response to qualified immunity? With regards to qualified immunity This was important to the district court, wasn't it? It was important to the district court, Judge. And do you think that's a problem for you? I don't think it's a problem for us. All we had to show, again, at this early phase is without proving that this individual knowingly committed illegal acts, is to assert in a pleading that he knowingly violated the law. He knowingly allowed for folks to be wasting public dollars. And mind you, in Anderson, it's clear that corruption, malfeasance, improper illegal use of public funds are matters of public import. So under Anderson, that this corruption, malfeasance, improper illegal use of funds. Now, all we have to plead, Judge, is that this official, in his official capacity as sheriff, knew that this was happening, was aware, allowed it to happen, was even involved in it without proving and going to the merits of, again, how that actually transpired. So that is in the pleadings. And again, the trial court erred in not allowing that to be fleshed out further on in the process. I'm just not following you. I don't know what qualified immunity has got to do with this. That's a friendly question. No, I get it. I get it. And the friendly answer is the court should not have dismissed this individual based on qualified immunity. Again, the immunity only protects those that do not knowingly violate the law. So that, in a nutshell, sums up our qualified immunity argument. I think the court blatantly missed the boat on that one. And back to the point of substance, the substance of these communications, whether external or internal, and the record is filled with instances of external communications. It's a matter of substance over forum. With regard to the substance, we're talking about the substance goes to the point of where it happened. Admittedly, these communications happen both at work and outside of work. But the substance goes beyond where it happened. Because as long as these communications go above and beyond the scope of one's primary duties, then there is a protection here. Now, Deputy Broussard isn't a deputy 24 hours a day, 365 days per year. He's also a private citizen. And I believe the trial court ignored that fact. And Anderson goes on to say that a citizen that works for the government is nonetheless a citizen. And as a private citizen, he addressed these issues of public concern that also in Anderson and Garcetti make it very clear that these matters that have been pled, that are in the pleadings, in the amended pleadings address. Those are automatically items for public concern. Now again, he was not simply just performing his job duties even under pickering. He wasn't speaking out about work. So his claims are protected as protected speech addressing matters of public concern regardless of whether or not it was directed at their superiors. And this same case law, the same progeny states that it doesn't matter who they're directed at. It's okay that they were directed at his immediate superior. That wouldn't otherwise preclude a claim against him. It wouldn't preclude a claim against Jefferson County. And it would not allow for a qualified immunity defense. Now again, 12B6 motions are rarely granted, should not have been here. He spoke as a citizen on a matter of public concern. And the speech precipitated the adverse employment action. He was forced out. You're a pain in my ass. You either leave or we're going to make you leave or you're going to lose everything that you have. And again, we still have to prove it. I'm fully aware of that. But as long as it was properly pled, it survives 12B6. And I see that I'm running out of time, so I will come back. And you've saved your time for rebuttal. I saved my five minutes for rebuttal. Thank you, Judge. Mr. Calvert. May it please the court. The appellant is wrong that Twombly and Iqbal did not apply in this case. Those are pleading cases. Twombly, of course, was a motion to dismiss case just as this one is. And in Twombly, the court specifically recognized that although you may not have to plead detailed facts, you must plead more than mere layman's terms. Labels and conclusions, which is all that was pled by the plaintiffs in this matter. With regard to this case, as the appellant pointed out, there are both instances of internal and external speech. With regard to the comment, you're becoming a pain in my ass, that comment came when the sheriff confronted Mr. Broussard about his failure to approve overtime. It was clearly internal and under Garcetti. It was part of Mr. Broussard's ordinary duties and therefore was not protected speech under the First Amendment. But when we go back to Twombly and with regard to the pleadings of the plaintiff, we know as the court knows, in Iqbal, the Twombly rule was applied in all civil cases. And basically some of the statements in Twombly are very relevant to this particular cause of action. That factual allegations must be enough to raise a right to relief above the speculative level. And in Twombly, the allegation was that the aggrieved party believed there was a conspiracy. That's what's been pled here. A belief that Sheriff Woods was aware of this internal and external speech. The plaintiffs were given a right to amend. But when they amended, there's only one instance, which is the one that's already been discussed, where Sheriff Woods is pled to have known about the statement. And that was when Sheriff Woods confronted him about a specific job duty, which is not protected by the First Amendment. In Iqbal and in Twombly, the court said the pleading has to move it from conceivable to plausible. The language in Iqbal was conceivable to plausible. In Twombly, it was from possibility to plausibility. And in this matter, we have instances of internal communications on every single occasion that was made to a supervisor. Mr. Broussard was a senior sergeant. He had training and supervisory responsibilities. And in each occasion, those were made internally and they fall into the Garcetti rule that it is not protected speech. With regard to the instances of external speech, there is not one single fact pled that Sheriff Woods knew about any of those. And in addition to that, when we look at some of those, four years ago, Mr. Broussard told a retired county commissioner. That's all we have. Then three years before the adverse employment action, he had dinner with a judge and other people, including Mr. Broussard's wife. Then there are other instances, seven instances basically, the last being undated, but in which Mr. Broussard alleges he was required by Judge Sanderson, a district judge, to make certain reports as a bailiff. And he was told by Chief Deputy Stevens he did not have to make those reports. When he didn't make that, when he told that to Judge Sanderson, there's no facts indicating that was ever communicated to Sheriff Woods. But regardless, that is an internal communication to an outside agency. But as this Court recognized, in Gibson v. Kilpatrick, the fact it's made to an outside agency, if it's within his official duties, which it clearly was, this was a report Judge Sanderson had asked Mr. Broussard to make. So consequently, this was not protected speech to Judge Sanderson, regardless of whether or not it was actually conveyed to Sheriff Woods, for which there's no evidence of that. But when we take all these instances, which there are seven specific instances, dating back to March of 2009, then 2010, he spoke to the Tea Party in 2012, approximately 14 months before his adverse employment action. He also spoke with a Jefferson County Sheriff's deputy, a co-worker, outside of his employment. All of those are far removed from the disciplinary action made the basis of this litigation. In addition to that, when the Court considered something similar in Burnside v. Kalin, the Court noted that only 13 months, that 13 months had passed between the time of the only alleged protected activity and the adverse employment action. And that was a motion to dismiss case also in the Fifth Circuit. And the Court said without a causal link between termination and the alleged protected activities, there's no constitutional violation as a matter of law. With regard to all the external complaints made by Mr. Broussard, there is not one single fact pled pointing that Sheriff Woods was aware of that or that any of those individuals whom he communicated with advised Sheriff Woods of that communication. This is similar in some respects to the determination that was made in Houston v. EBI, a 1995 Fifth Circuit case, in which the Court said an indispensable element of a prima facie case of retaliatory discharge is a causal nexus between the activity and the termination. In that case, the employee said, well, my employer must have known about this. She had filed an EEOC complaint and a workers' compensation complaint. And they must have acted on that. In that case, the Fifth Circuit said, that is an unavailing leap of logic. And that's exactly what we have in this case with regard to the external speech asserted by Mr. Broussard. There's not one fact indicating Sheriff Woods was aware of it, not one fact indicating any of those individuals communicated anything to one of those instances. And in one of those dinner parties, Mr. Broussard points out that even his wife was in attendance. You have just as much proof that Mrs. Broussard communicated this to Sheriff Woods as you do any of the other people involved that he's identified in the external speech. That is insufficient. That is the deficiency in his pleading. The court last year in Robinson v. Jackson State University said the causation prong of any retaliation claim requires proof that the employer knew about the employee's protected activity. That does not exist in the pleadings of the plaintiff in this case, other than that one occasion when there was a communication with Sheriff Woods. Now, when we talk about the internal complaints, we know that Garcetti says the threshold question is whether, not the content of the speech, but the role the speaker had at the time it was made. And we know from the pleadings of the plaintiff that he has made complaints about work hour abuse, wastefulness, excessive lunch hours, people working extra duty jobs when they're on the payroll, a chain of evidence issues, the failure to record incidents, and even the failure of some people to pass an agility test. But in each instance, he's making that report to his supervisor. It's in the ordinary course of his duties. He had payroll responsibilities. He had information that was derived from his particular knowledge arising out of his job duties. These were made up the chain of command, and the Fifth Circuit has consistently held, as have other circuits, that when you're making complaints up the chain of command, there is no First Amendment protection available. Well, that's not what the Supreme Court has said. The Supreme Court has said that you can arrange to meet with your employer and air all of these grievances up the chain of command. You still have to look at whether it's part of the job or not. So up the chain is not dispositive. It's not completely dispositive, but these were made up the chain of command, and it is a factor to be considered. In addition to that, we know that you look at what his job description was. We look at things such as his special knowledge that he would have acquired in the position that he was in, and all of those mitigate toward them not being First Amendment-protected speech. This Court has recognized that a police department, which would apply to a sheriff's department, is in the nature of a paramilitary organization, and that in maintaining public safety, they're giving more latitude in their decisions. In fact, in Graciola, the Court more recently said that they are given wide latitude. But his speech here owed its existence to his professional responsibilities, and when you take all of that into consideration, does not overcome or cause it to be protected First Amendment speech. The fact that it concerned corruption also is not dispositive. This Court, again, in the Gibson v. Kilpatrick case, noted that the speech dealt with public corruption, but said it does not change the result. Garcetti's rule is a broad one. So with regard to that, even when you look back at Garcetti, the Court said that he was saying, while exposing governmental inefficiency and misconduct is a matter of considerable significance, there are other legislative enactments to address this, particularly the whistleblower claim or other claims under the labor laws. In 2007, this Court in Williams v. Dallas ISD said that even if speech is of great social importance, it is not protected by First Amendment if it's made pursuant to official duties. I would also point out that in the law enforcement context, in Wilson v. Tredgray in 2015, where a deputy reported illegal recording inside an interrogation room and suffered discipline as a result, the Court said, as a law enforcement official or officer, he is required to report any action he believes violated the law. And that would apply to Mr. Broussard. Did he have a whistleblower cause of action? I'm sorry? Did he have a whistleblower cause of action? I mean, did he have a place to go whistleblow, in other words, under the law, the state law? Yes. He could go to another governmental agency. He could go to the FBI. He could go to the Justice Department. He could go to the Texas whistleblower report. But he did not do that. He instead has pursued a First Amendment cause of action. And he is not and cannot be successful in his First Amendment cause of action because the internal speech was consistent with unprotected speech because it was all made as part of his job duties and job responsibilities. With regard to the external speech, again, there is not one fact pled indicating that he, he being Sheriff Woods, was ever aware of that information or that it was ever communicated to him. The appellant has cited to the Anderson v. Valdez case. And in that case, you had the employee specifically pled that the individual had knowledge. And he pled the basis for that knowledge was that he had been told by another judge that the person whom he was bringing the retaliation charge against was aware of his external speech and had acted on that to try to keep him from getting the job. That is not the situation that we have here. There is not one fact pled that Sheriff Woods knew about any of the external speech. With regard to the issue of qualified immunity, we know this court in Gibson and in other cases has said the courts struggle with determining when an employee's speech was made as a citizen or as a matter of public concern. And we know that in Garcetti, it has been well recognized that the Supreme Court declined to articulate a comprehensive framework in which to determine when a public employee is speaking as a citizen. A couple of years ago, the Fifth Circuit in Howell v. Town of Ball, in which a police officer was assisting in an FBI investigation of the police department, granted qualified immunity, citing the fact that the lack of application of Garcetti to facts similar to those in this case, combined with the clarification in the Lane v. Franks case, compels the decision that the defendants did not violate clearly established law. The district court said that there is not any clearly established law which has been violated. We're at the 12 v. 6 stage. How does qualified immunity, how is that even a part of this? That's usually dealt with. There's got to be a motion for summary judgment or something it seems to me. Yes, Your Honor. But the factual inadequacy with regard to pleading a First Amendment claim is similarly a factual inadequacy as to qualified immunity. And we raised the qualified immunity. The appellant was allowed the opportunity to amend and still did not address that. But with regard to the sheriff also, on the issue of qualified immunity, if there's no underlying constitutional violation, there can be no, there cannot be a finding against him that he violated the Constitution. With regard to whether or not on qualified immunity his actions were objectively reasonable in light of clearly established law, we're simply pointing out that the law would not be clearly established for him to know the parameters of what exact conduct was prohibited, particularly with regard to the internal speech. With regard to the official capacity claims on which the court granted the motion to dismiss, we believe the appellants have confused official duties with official capacity lawsuits. And in this particular circumstance, the official capacity claim made here is duplicative of the one that's already been made against Jefferson County. And therefore, on that basis alone, the district court was correct in dismissing any official capacity claims against Sheriff Woods. Finally, with regard to the issue of policy and custom, the courts have uniformly held that where there's no constitutional violation by an employee, the employer cannot be held liable. There's no vicarious liability. And that isolated instances of unconstitutional actions by governmental employees will almost never trigger liability. But they must show a pattern of similar incidents. The plaintiffs pled to other instances where there might have been some similar conduct. Under various holdings, that would be insufficient to show a pattern or practice of similar incidents. And we would say that there is certainly not pled sufficient evidence of existing permanent and well-settled policy of discriminating against employees based on their First Amendment rights. Finally, with regard to the claims by Mr. Broussard, the sheriff had a legitimate reason regardless of and the Mr. Broussard has pled that. There was a courtroom incident which resulted in lawsuits involving Mr. Broussard which resulted in lawsuits against the county. They resulted in him being found to have violated policies of the Jefferson County Sheriff's Department. He was issued discipline by the Internal Affairs Board. And then Sheriff Woods caused him to have a suspension for which he had an appeal to the Citizens Review Committee. He decided to not pursue that. But that same conduct for which Sheriff Woods suspended him ultimately resulted in Mr. Broussard being indicted by a grand jury. So we have that versus no facts whatsoever connecting him to any external speech, any external speech. And the court properly granted the motion to dismiss based on Iqbal and Twomley and the other line of cases, including cases from the Fifth Circuit that require the pleadings to be more than just mere speculation and alleging parallel conduct. All right. Thank you, Mr. Calvert. Mr. Kennard, you have saved time for rebuttal. Thank you, Judge. May it please the Court. Let me quickly go into the conduct issue. Now, these charges were, in fact, retaliation. So apparently Sheriff Woods knew that there was something to retaliate against because ultimately these charges in and of themselves were dismissed. They were found to be without merit, these charges that are being discussed here. And let me remind this Court that we're at the pleading stage. We're not at the stage where any of these defenses have been otherwise properly asserted. There was an internal discipline, though. Is that right? That's correct. And that in and of itself is a fact showing retaliation. So this internal discipline that ultimately got him in the criminal justice system subsequent to all this activity and this speech was ultimately outright dismissed. So, yes, there was an internal investigation by none other than Sheriff Woods. He's the one that initiated this investigation. That further goes to show that there was retaliation in place. Would you address the timing of external speech? What was the closest instance of external speech before his termination or before he? And Judge, from what I understand, it was sometime in 2013. But I think it's important to note that the trial court didn't even address that. In fact, they Well, I'm asking you to address it. Sure. Now, in this instance, the most recent speech was 2013. But for our purposes, and the trial court went on to say that we're not addressing this because the timeliness is there as it pertains to the employment action. So the retaliation and First Amendment claims were, in fact, timely, which is all we're pleading here today. Now going and looking at this pleading, if we look at paragraph 33 of the pleading, Broussard, prior to number 33, Broussard was reporting this to a panel. And on 33, it states, on August 9, 2013, Sheriff Broussard met with Sheriff Woods, who told Sergeant Broussard that this had to stop before it got out of hand. He began to threaten Sergeant Broussard with termination. He told Sergeant Broussard that he should think about his options. This goes back to what I was discussing before. You've made a career here. Do you lose your benefits or do you go ahead and walk away? Well, he decided to walk away. That's a pretty tough choice to make when you've got a family. Now going back to Iqbal and Twombly, it seems to me that counsel is really resting their entire case on Iqbal and Twombly. But there's more than just labels and conclusions. The pleadings go beyond, as I just discussed here and gave you an example. Anderson actually trumps this because Anderson specifically applied Iqbal and Twombly standard. You can't ignore this. It's not a case to ignore. It is the case. Anderson takes Iqbal and Twombly and takes this exact set of facts and lays out what the trial court should have done but didn't do because they erred in their ruling. So what Mr. Calvert says about Anderson is that the pleadings there were different because the pleadings themselves showed knowledge. Well, let me go back to Anderson. In Anderson, the court held that we don't consider the correctness of the plaintiff's versions of the fact. What counsel would have you believe is that this court should go in and look at the entirety of the case and that we needed to marshal all our evidence in the form of a pleading, which is just not required by Anderson or Garcetti. So you can't go in to all the facts at this stage. And again, the standard in Anderson, which is the case, the correctness of the plaintiff's version of the facts should not be considered. A complaint does not need detailed factual allegations. And again, that's clearly stated in Anderson. Now, I heard a lot of discrediting of the claims, a lot of not liking the facts. And clearly, they were pled for counsel and his clients to decide that they didn't like them. Trying to assess a value to this question of did he actually know or how did he know is not the standard. Again, the standard is not to show how this individual knew of these claims. It's merely sufficient to plead that he knew. All right? That he knew. The district court rejected the time in this argument as stated before. And his employment case was brought timely. We have a timely filed case. That would otherwise be a reason to dismiss at the 12B6 level. And the court, if they needed an out, that would have been it. It didn't choose that as an out. It decided to go against Anderson, to go against Garcetti, and that was a mistake. And I'm going to end here. Counsel would have this court believe that Broussard could never be a private citizen. That would be a slippery slope. Again, this is a simple difference between addressing payroll, because that's part of your job function, and addressing corruption. Those are two distinct things. And my client can always be a private citizen under the Constitution. I see that I've run out of time and thank you for your consideration. Thank you, Mr. Canarda, and your case is under submission.